In re Veda T. HILL, Debtor.

Veda T. HILL, Plaintiff,

v.

ALLRIGHT MORTGAGE COMPANY,
Defendant.

Bankruptcy No. 95–5–1697–SD.
Adversary No. 95–5191–SD.

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Oct. 15, 1996.

Judgement Filed Oct. 30, 1996.

Elizabeth Renuart, National Consumer Law Center, Inc., Washington, DC, James A. Mayhew, St. Ambrose Legal Services, Baltimore, MD, for Debtor/Plaintiff.

Thomas D. Renda, Siskand, Grady, Rosen & Hoover, P.A., Baltimore, MD, for Defendant.

## MEMORANDUM OPINION GRANTING RELIEF

E. STEPHEN DERBY, Bankruptcy Judge.

By her complaint Plaintiff, Ms. Veda T. Hill, a Chapter 13 debtor, seeks to rescind

and avoid the mortgage of Allright Mortgage Co. ("Allright") on her home, to reduce Allright's claim by offset, to be awarded statutory damages, and to obtain other related relief. The Complaint asserts (1) three alleged violations of the Federal Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and (2) two alleged violations of the Maryland Consumer Protection Act. Md. Com. Law Code Ann., Title 13 (1990). Based on these alleged violations, Plaintiff seeks a determination that she has properly rescinded Allright's security interest in her home and that Allright's mortgage is avoided. Plaintiff granted the mortgage to secure a loan for home improvements and bill consolidation. Plaintiff has also objected to Allright's secured claim on the same grounds. The two matters have been consolidated.

The three alleged violations of TILA are as follows: (1) Allright improperly disclosed (and it charged Plaintiff twice for) a $236.11 advance interest payment; (2) Allright improperly failed to disclose to Plaintiff a $15.00 courier fee as a Finance Charge, and it should not have calculated the fee as part of the Amount Financed, resulting in an understatement of the Annual Percentage Rate ("APR") disclosed to Plaintiff; and (3) Allright improperly failed to disclose to Plaintiff that a $2,000.00 broker's fee was a Finance Charge, and it should not have included the fee as part of the Amount Financed, causing a further understatement of the APR disclosed to Plaintiff. Plaintiff further asserts that under the Maryland Consumer Protection Act, she is entitled to civil damages based on Allright's alleged double charge for the $236.11 in interim interest.

Allright generally denies that it violated TILA.

Having considered the evidence and reviewed the memoranda of the parties and applicable law, the court finds, on the facts before it, that: (1) the $236.11 interim interest payment was incorrectly classified and double charged; (2) Allright did not violate TILA with respect to the $15.00 courier fee; and (3) Plaintiff is entitled to judgment for a violation of TILA involving the $2,000.0 broker's fee.

## I.

### *Findings Of Fact.*

Plaintiff is the owner of a rowhouse in Baltimore City, Maryland at 2019 Whittier Avenue in which she and her two children reside (the "Home"). Allright is a Maryland corporation engaged primarily in the business of arranging residential mortgage loans.

In March, 1992 Plaintiff, her now deceased father[1] and her husband (the "Borrowers") decided to have some repairs done on their Home. Unable to pay for the repairs themselves, the Borrowers sought financing for the work. The contractor whom they selected to perform the work referred them to a Mr. Nathan Hyleigh, a lender and broker. Mr. Hyleigh told the Borrowers that his company, United Mortgage and Financial Services, could not provide financing for them, but that he would attempt to locate a lending institution that would be willing to grant them a loan. Mr. Hyleigh subsequently brokered a loan between the Borrowers and Allright, through Mr. Melvin Thomas, who is the president of Allright.

Allright receives virtually all of its business through brokers. During the fifteen years that Allright has been operating, there were perhaps only two or three times when a broker was not used; and each of these occasions involved the refinancing of an existing loan. Allright does not advertise, solicit or contact potential borrowers directly. As Mr. Thomas testified, going through a broker is the "only way we get our business." Allright has used about five brokers, including United Mortgage. In the past, about 20% of Allright's loans were brokered by United Mortgage, but not as many recently. Perhaps 90% of Allright's loans are consumer mortgage loans. Allright made 30 loans last year, which is fewer than the 45–50 loans made in previous years.

Allright is a family business engaged solely in making mortgage loans. It is staffed by

---

1. Plaintiff's father, Eugene Taggert, originally owned the home, but deeded a remainder interest to Plaintiff after creating a life estate for himself. Mr. Taggert died on December 24, 1992, leaving Plaintiff with a fee simple interest in the property.

Mr. Thomas, who is retired from other endeavors and spends one to two hours each day, by one part time employee, Mr. Thomas' daughter, and by his brother-in-law and partner, who does the appraisals. Mr. Thomas makes the credit decisions and oversees operations. The referring, independent loan brokers obtain the paper work, obtain credit reports or credit information if needed, verify income, obtain completed loan applications, and do anything else, except appraisals, that is required for Allright to make a loan. Allright does not belong to a credit service.

It is Allright's practice to include on the settlement sheet the fee for the loan broker that generated each loan, and the fee is remitted to the broker. No part of the broker's fee is retained by Allright, and Allright does not have a policy as to what the broker's fee should be. Allright considers the broker's fee to be a matter between the borrower and the broker, and there was here a separate contract between United Mortgage and the Borrowers. Def. Exh. 1.

Millard S. Rubenstein, Esquire, the son-in-law of Mr. Thomas, handled the closings of all loans for Allright. Mr. Rubenstein was given complete authority to act for Allright to close loans, from preparing paper work to deciding what disclosures should be made, and he was not given instructions by Allright, other than to take care of it.

Allright loaned the Borrowers $25,000.00. Material disclosures on Ms. Hill's Federal Loan Disclosure Statement were: APR—20.7320%; Amount Financed $24,250.00; Finance Charge—$55,018.71; and Total of Payments—$79,268.71. Plain. Exh. 6. The term of the loan was 180 months with a monthly payment of $439.07, and a call provision after 5 years. *Id.*

Settlement on the mortgage loan occurred on April 9, 1992. From the gross amount of $25,000.00, Defendant deducted, *inter alia,* a "Brokers Fees" of $2,000.00 and a fee of $15.00 for a "Courier to record documents." Memorandum of Settlement and Itemization of Amount Financed, Plain. Exh. 5. Interim interest of $236.11 was not deducted. Allright escrowed $10,500.00 for the home repairs, and $9,956.87 was left and described as "Cash to Borrower." *Id.*

At the settlement, Allright's attorney, Millard Rubenstein, Esq., explained to the Borrowers that their first mortgage payment was not due until June 1, 1992, but that they would have a $236.11 interest payment due on May 1, 1992 for the interest that would accrue between the date of settlement and May 1. Testimony of Millard S. Rubenstein; Plain. Exh. 13. Mr. Rubenstein presented the Borrowers with a bill for the $236.11 in interest that would be due on May 1, and he asked them if they would like to have that amount deducted from the $9,956.87 in proceeds they were to receive. Plain. Exh. 13 at p. 8. Allright did not require the payment to be deducted from the proceeds, but the Borrowers, nevertheless, elected to have the interest payment deducted. See Plain. Exh. 13 at p. 18. Consequently, a check was issued to the Borrowers in the amount of $9,720.76 ($9,956.87 less the $236.11 interest payment the Borrowers had authorized to be deducted). See Plain. Exh. 14.

Upon the completion of the repairs, the escrowed funds were paid out in full.

At settlement a check was issued to the loan broker, United Mortgage, in the amount of $2008.80. Plain. Exh. 16. Allright did not produce a bill or evidence of payment for the $15.00 courier fee. Mr. Rubenstein testified that Borrowers had no choice with respect to the courier fee. The documents had to be recorded, and he took the low end of the range for banks, regardless of actual cost among several alternatives. The courier fee charge went to Mr. Rubenstein, and he arranged for the recording.

Between settlement and December 5, 1994, Plaintiff paid $13,946.95 for principal, interest, taxes and insurance. List of Payments Taken From The Payment History, Plain. Exh. 18. Thereafter, payments ceased, and a foreclosure action was instituted by Allright in the Circuit Court for Baltimore City in February, 1995. On March 6, 1995, Ms. Hill telefaxed and mailed a letter to Allright rescinding the loan and mortgage for the stated reasons that the interim interest of $236.11 was erroneously placed in amount financed and the $15 courier fee was erroneously placed in amount financed instead of

the finance charge. Plain. Exh. 19. Allright refused to honor the rescission by letter dated March 23, 1995. Ms. Hill sent Allright a second rescission letter on October 10, 1995. Plain. Exh. 21. This second letter mentioned for the first time that Debtor's rescission was based on the broker's fee charge.

Before the scheduled foreclosure sale of her home, Plaintiff filed this Chapter 13 bankruptcy petition on March 9, 1995. On April 6, 1995, Allright filed a Proof of Claim as a secured creditor in the amount of $26,565.43, of which $2,151.33 represents arrearage.

Regarding the subject Hill loan, if the $236.11 interest charge was treated as a prepaid finance charge, the APR would be 20.9706%; the amount financed would be $24,013.89; the finance charge would be $55,022.48; and the total of payments would be $79,036.37. If the $236.11 interest charge and $2,000.00 broker fee were treated as prepaid finance charges, the APR would be 23.1864%; the amount financed would be $22,013.89; the finance charge would be $57,022.48; and the total of payments would be $79,036.37.

Finally, if the $236.11 interim interest, $2,000.00 broker fee, and $15.00 courier fee were treated as prepaid finance charges, the APR would be 23.185%; the amount financed would be $21,998.89; the finance charge would be $57,037.48; and the total of payments would be $79,036.37. Plain. Exh. 25. The parties have stipulated that if the court finds that the only charge that should have been within the Finance Charge is the courier fee, its impact on the APR is less than ⅛ of 1%.

## II.

### Conclusions of Law.

Three issues on which Plaintiff seeks judgment involve the alleged violations of TILA. The fourth issue involves Maryland's Consumer Protection Act. Each issue will be addressed in turn.

### a. General provisions of the Truth In Lending Act

TILA was enacted in 1969 to increase the knowledge of consumers about the costs of credit.

It is the purpose of this title [15 USC § 1601 *et seq.*] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit practices.

15 U.S.C. § 1601. "Congress intended the statute to create a system of private attorneys general to aid in its enforcement, . . . ." *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142, 1144 (11th Cir.1994). Because of its remedial purpose, strict compliance with TILA's provisions is required, and even technical violations may result in the creditor being held liable. *Id.* at 1144–45; *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983).

Under TILA, information that must be disclosed to a borrower includes: (1) the Amount Financed; (2) an Itemization of the Amount Financed; (3) the Finance Charge; (4) the Annual Percentage Rate ("APR"); and (5) the Total of Payments. 12 C.F.R. § 226.18. TILA defines many of these terms and gives examples of how different types of expenses should be classified. For the subject loan, Plaintiff challenges the classification of the fee paid to the loan broker, of the fee for courier service, and of the interim interest payment. In computing the APR that was disclosed to Plaintiff, Allright did not classify the loan broker and courier fees as Finance Charges; rather Allright deducted them from the Amount Financed. This treatment is significant because Finance Charges are factored into the APR, and expenses deducted from the Amount Financed are not. TILA requires that the APR disclosed to borrowers be accurate to within one-eighth of one percent (.125%). 15 U.S.C. § 1606(c); 12 C.F.R. § 226.22(a).

Plaintiff alleges that the APR disclosed by Allright to her was not accurate within these parameters, and that it was understated. If the broker and courier fees had been classi-

fied as Finance Charges, Plaintiff contends the APR disclosed to Plaintiff would have been more than one-eighth of one percent higher. The failure to disclose the APR of a loan accurately to a borrower is a violation of TILA and would entitle the borrower to rescind the loan. 15 U.S.C. § 1635.

The TILA defines the Amount Financed as the total amount of credit provided by the lender, and it equals the proceeds of the loan actually received by the borrower, or placed into an escrow account for the benefit of the borrower, plus all expenses financed by the creditor that are not Finance Charges. 12 C.F.R. § 226.18(b). For loans that are secured by an interest in real property, certain expenses may be deducted from the Amount Financed and not considered Finance Charges. Such expenses include fees for title examination, insurance, deed preparation, settlement, notary service, obtaining a credit report, appraisal, and application. 15 U.S.C. § 1605(e); 12 C.F.R. § 226.4.

Finance Charge is defined by TILA as the cost the consumer must pay to receive the credit given by the lender. Finance Charge includes charges payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as a condition to the giving of credit. Specific examples of finance charges that TILA mentions are interest charges and points. 15 U.S.C. § 1605; 12 C.F.R. § 226.4.

■ The purpose for requiring creditors to disclose finance charges is to provide assurance that TILA's objectives are not circumvented by allowing creditors to conceal the cost of credit. *Mourning v. Family Publications Serv.*, 411 U.S. 356, 366, 93 S.Ct. 1652, 1659, 36 L.Ed.2d 318 (1973); *Rodash*, 16 F.3d at 1147. As Chief Judge Posner recently stated in *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 940 (7th Cir. 1995),

> One form this abuse might take—an example of indirect imposition—would be to hire an agent to perform a service in the making of the loan that the lender would normally perform and reflect in the interest rate, and to bill the borrower for the cost of the service, thus concealing part of the interest expense of the loan.

Finance Charges fall into two general categories: (1) those that are prepaid (*i.e.* paid at or before settlement), such as points; and (2) those that are paid over the life of the loan, such as interest. Both are factored into the APR as finance charges. *See* 12 C.F.R. § 226.2(a)(23).

Under the statute as amended, fees payable to a third party closing agent, such as an attorney, are deductible from the Amount Financed, and need not be disclosed as Finance Charges, as long as "the creditor does not require the imposition of the charges or the service provided and does not retain the charges." 15 U.S.C. § 1605(a) as amended on November 8, 1995. However,

> [c]harges imposed on the consumer by someone other than the creditor are finance charges ... if the creditor requires the use of a third party as a condition of or incident to the extension of credit, even if the consumer can choose the third party, or the creditor retains the charge.

12 C.F.R. Pt. 226.4(a)(3), Supp. I (Regulation Z). It is based on these general guidelines that the court considers Plaintiffs and Defendant's respective motions.

### 1. Allright violated TILA in its collection and disclosure of the $236.11 in interim interest.

■ The first alleged violation of TILA upon which Plaintiff seeks judgment involves an interim interest charge of $236.11 that was paid by Plaintiff prior to its due date and deducted from the amount distributed to Ms. Hill. Plaintiff alleges that Allright collected the $236.11 as a prepaid Finance Charge, as part of the Amount Financed, and again by deducting it from the proceeds that were distributed to Plaintiff.

The parties do not dispute that Allright was entitled to charge Plaintiff the $236.11 in interest that was due on May 1. The expense was properly allocated as a Finance Charge. 12 C.F.R. § 226.4(b)(1) (the clearest example of a finance charge is interest); Deposition of Millard Rubenstein, p. 20 (Oct. 2, 1995). However, by deducting the charge from the proceeds but not from the Amount Financed, Allright was collecting the $236.11 twice—

first as a Finance Charge and second, in part, as interest. In other words, Allright collected interest on prepaid interest, and this increased collection extends over the life of the loan. A prepaid Finance Charge should be subtracted from, and not included in, the Amount Financed. *Id.* at § 226.18(b). The fact that Borrowers made a voluntary choice makes no difference. *Id.* at § 226.2(23). Therefore, the interim interest charge was improperly disclosed under TILA.

*2. The $15.00 courier fee was not a Finance Charge, and it was properly calculated as part of the Amount Financed.*

The second violation of TILA that Plaintiff has alleged is that the fee for courier service charged by the attorney handling the settlement was a Finance Charge. It is undisputed that Plaintiff was charged a $15.00 fee for having a courier record the mortgage documents. Further, this was not reimbursement for an actual cost, but was an approximation based on a standard charge. This expense was deducted from the Amount Financed rather than disclosed as a Finance Charge, and Plaintiff has alleged that this allocation was improper and violated TILA.

The United States Court of Appeals for the Seventh Circuit recently considered this issue on comparable facts. It held that a fee for courier service is not a Finance Charge where the creditor has not required the use of a courier or retained the charge. *Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 943 (7th Cir.1995). The court's decision was issued in deference to the comments of the staff of the Federal Reserve Board, who have stated that,

> a fee for courier service charged by a settlement agent [or attorney acting as a settlement agent] to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge.

12 C.F.R. Pt. 226, Supp. I, 226.4(a)–4. Writing for the court, Judge Posner noted that although the commentary was issued after the transaction in that case, and was therefore not binding upon the court, it was useful as guidance in clarifying how TILA should be interpreted. *Cowen,* 70 F.3d at 943.

Following the standard suggested by the staff of the Federal Reserve Board and applied by the Seventh Circuit, and there having been no evidence offered that Allright itself required the use of a courier or retained any of the $15.00 charge, the court concludes that Allright did not act improperly in deducting the courier fees from the Amount Financed as such charges are not a Finance Charge. Mr. Rubenstein as settlement attorney, made the courier charge to cover, on the average, his costs. Allright did not require or retain this charge for itself.

*3. The $2,000.00 Broker's Fee was improperly included as part of the Amount Financed, and it should have been included as a Finance Charge.*

In construing whether a particular expense constitutes a Finance Charge under TILA, 15 U.S.C. § 1605(a) and 12 C.F.R. § 226.4(b)(3) must be examined. Certain charges may be excluded as Finance Charges if they are bona fide, reasonable in amount, and relate to one of the following:

(i) Fees for title examination, abstract of title, title insurance, property survey, and similar purposes.

(ii) Fees for preparing deeds, mortgages, and reconveyance, settlement, and similar documents.

(iii) Notary, appraisal, and credit report fees.

(iv) Amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge.

12 C.F.R. § 226.4(c)(7). However, fees are Finance Charges if the creditor either requires the fee or retains a portion of the fee for itself. 12 C.F.R. Pt. 226, Supp. I § 226.4(a)(3).

Where a broker is required, as in the instant case, the broker's fee must be included as a Finance Charge. *See In re Whitley,* 177 B.R. 142, 148 (Bankr.D.Mass.1995). It does not matter that the lender does not retain part of the broker's fee for itself, especially when the lender benefits from the

broker's services. *Id.; See In re Grigsby*, 119 B.R. 479, 486 (Bankr.E.D.Pa.1990).

While it is true that Plaintiff contacted Mr. Hyleigh of her own volition and not through Allright, it was acknowledged that Allright only made loans through brokers, except for 2 or 3 refinancings over 15 years, and that this arrangement benefitted Allright in many ways. Testimony of Melvin Thomas. The fact that Allright did not expressly require Plaintiff to use a particular broker, *e.g.*, Mr. Hyleigh of United Mortgage, does not alter the court's conclusion. United Mortgage brokered about 20% of Allright's loans.

In *Johnson v. Fleet Finance, Inc.*, 4 F.3d 946 (11th Cir.1993), the Eleventh Circuit held that a broker fee was not a Finance Charge where a creditor used brokers for many loan transactions, but did not require borrowers to use a broker. In determining whether the creditor had a policy of requiring borrowers to use a broker the court was persuaded by the fact that, at a minimum, 16.5% of the creditor's loan transactions did not involve a broker. In the instant case, less than 1% of Allright's total loan transactions did not involve a broker, and all those that did not involve a broker were refinancing an existing loan.

Because Allright required Plaintiff to use the services of a broker, the broker's fee charged to Plaintiff was required by TILA to be included as a Finance Charge. Allright has offered no persuasive evidence to suggest otherwise. Mr. Thomas testified only that he would have accepted a loan if it were offered to Allright without a broker. However, such an event never happened. Moreover, a recent amendment to TILA supports the court's conclusion by expressly including as an example of finance charges "[b]orrower-paid mortgage broker fees, including fees paid directly to the broker or the lender (for delivery to the broker) whether such fees are paid in cash or financed." TILA Amendments of 1995, Pub. Law 104–29 [H.R. 2399], Sec. 2(b)(1), September 30, 1995 (amending § 1605(a)). The TILA Amendments of 1995 were meant "... to clarify the intent of such Act ... ", rather than to change it. See P.L. 104–29, subtitle. These amendments are not, however, applicable to this case because this action was commenced before June 1, 1995. *Id.* at § 4(b). They are referred to here merely as not expressing an intent contrary to the court's conclusions.

For these reasons, the court finds that Allright violated TILA by not disclosing the $2,000 broker's fee as a Finance Charge, and by including the broker's fee in the Amount Financed.

### 4. Plaintiff's right of rescission.

Section 1635 of TILA provides Plaintiff with a right of rescission. 15 U.S.C. § 1635. Where the borrower properly elects to rescind a transaction based on a violation of TILA, the borrower's liability for Finance Charges is avoided, as is any security interest the lender may have obtained as a result of the transaction. *Id.* Within 20 days after the lender's receipt of a notice of rescission, the lender is required to terminate whatever security interest it obtained in the transaction. 15 U.S.C. § 1635(b). A potential problem for Plaintiff is that her right to rescind the transaction was limited by a three year statute of limitations period after Allright failed to disclose material information properly to Plaintiff. 15 U.S.C. § 1635(f). The limitations period commenced running on the date the transaction was consummated. *Id.*

In the instant case, the loan transaction was consummated on April 9, 1992. See Mortgage dated April 9, 1992, Plaintiffs Exh. 8. Plaintiff did not give Allright notice of her intent to rescind based on the improper broker's fee until October 10, 1995, more than three years after the loan had settled. Plain. Exh. 21.

Plaintiffs first attempt to rescind the transaction, however, via a letter to Allright, occurred within three years, on March 6, 1995, although it did not mention the broker's fee. Similarly, Plaintiff filed the complaint initiating this action on April 7, 1995, also within three years, but it also did not raise the broker's fees issue. Nevertheless, on February 5, 1996 the court granted Plaintiffs motion to amend her complaint and her objection to Allright's claim that she filed on April 24, 1995, without objection from Allright. Plaintiffs amended complaint related

back to the date of the timely original pleading because the added material concerning the broker's fee arose out of the same conduct, transaction or occurrence set forth in the original pleading. FRCP 15(c)(2), made applicable by Bankruptcy Rule 7015.

In the alternative, Plaintiff · may raise her TILA violation claims at any time as a matter of defense by way of recoupment or setoff. Section 1640(e) of TILA provides, in part:

> This subsection does not bar a person from asserting a violation of this title in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

The concept of recoupment is recognized in Maryland law. *Holloway v. Chrysler Credit Corp.*, 251 Md. 65, 246 A.2d 265 (1968). The right of setoff is recognized under the Bankruptcy Code. 11 U.S.C. § 553(a).

In the TILA context, courts have held that a defense based·upon TILA can be raised in a foreclosure or other proceeding at any time. *FDIC v. Ablin*, 177 Ill.App.3d 390, 126 Ill.Dec. 694, 532·N.E.2d 379 (1988); *Community Nat'l Bank and Trust Co. v. McClammy*, 138 A.D.2d 339, 525 N.Y.S.2d 629 (1988); *Dawe v. Merchants Mortgage and Trust Corp.*, 683 P.2d 796, 800–01 (Colo.Sup.Ct. 1984) (*en banc*). Allright chose to· file a foreclosure against Ms. Hill in state court. Ms. Hill· then instituted this bankruptcy action. Following that, Allright sought to collect on the alleged debt by filing a proof of secured claim. Ms. Hill filed an objection to the proof of claim raising her TILA claims defensively.

Specifically in the bankruptcy context, courts have held that when the creditor files a proof of claim, the debtor·may defend against that claim by raising TILA as a defense at any time. *In re Woolaghan*, 140 B.R. 377 (Bankr.W.D.Pa.1992); *In re Kenderdine*, 118 B.R. 258 (Bankr.E.D.Pa.1990); *In re Galea'i*, 31 B.R. 629, 633–35 (Bankr.D.Hawai'i 1981); *In re Norris*, 138 B.R. 467 (E.D.Pa.1992); *Jones v. Progressive–Home Fed. Sav. & Loan Ass'n*, 122 B.R.

246 (W.D.Pa.1990). Thus, Ms. Hill's defense to the Proof of Claim based upon TILA is not time-barred.

Contrary to Allright's contention, Ms. Hill did prove actual damages at trial. The method of measuring the actual damages under TILA is the amount by which the Finance Charge is understated. *Russell v. Fidelity Consumer Discount Co. (In re Russell)*, 72 B.R. 855, 864 (Bankr.E.D.Pa.1987). Ms. Hill presented proof from Mr. Rubenstein that he did not disclose the broker fee in the Finance Charge. Thus, the Finance Charge was understated by $2,000. In addition, two statutory penalties of $1,000 each are invoked for the disclosure violations and for the failure to honor the rescission. 15 U.S.C. §§ 1640(a)(1) and (a)(2)(A); *Curry v. Fidelity · Consumer Discount Co.*, 656 F.Supp. 1129, 1132–33 (E.D.Pa.1987).

Ms. Hill is entitled to the rescission remedy under TILA since she filed her complaint within three years of the date of the loan. She is also entitled to the $1,000 penalty for Allright's failure to honor the rescission. By objecting to the proof of claim, Ms. Hill can raise her TILA and Consumer Protection Act damage claims defensively to offset any amount she might owe Allright after application of the rescission remedy.

*b. Violations under the Maryland Consumer Protection Act. ·*

Allright violated the Maryland Consumer Protection Act by charging the $236.11 prepaid interest twice and by failing to disclose this material fact to Plaintiff. Md. Com. Law Code Ann. §§ 130–101, *et seq.*, See *id.* at §§ 13–101(c) and (d); 13–303(3). Since Plaintiff is paying, but has not paid, the entire indebtedness to Allright, the appropriate damage remedy would appear to be to reduce by setoff Allright's unpaid Finance Charge claim by $236.11.

*Conclusion.*

· For the aforementioned reasons, the court finds that: (1) Allright is entitled to judgment in its favor regarding the $15 courier fee; (2) because of Allright's failure to dis-

close the $2,000.00 broker's fee as a Finance Charge was a violation of TILA, Plaintiff is entitled to rescind the loan transaction, avoid the deed of trust, and cancel interest and settlement cost charges; and (3) for the TILA violations Plaintiff should recover actual damages of $2,000 for the broker's fee and $2,000 statutory damages. These remedies should be implemented by way of recoupment or set off.

Counsel for plaintiff is requested to submit an order that will incorporate and implement the conclusions reached herein.

### *JUDGMENT*

Upon consideration of the evidence presented at the trial of this matter on February 12, 1996 and the arguments of the parties filed before and after the trial and based upon the Memorandum Opinion of this Court Granting Relief filed on October 15, 1996, judgment is hereby entered this 30th day of October 1996 as follows:

ORDERED that the mortgage held by the Defendant on property known as 2019 Whittier Avenue, Baltimore, MD 21217 void; and it is further

ORDERED that the Defendant forthwith file a release of the deed of trust with the appropriate land records office; and it is further

ORDERED that the Plaintiff owes the Defendant $7,244.75 after subtracting the closing costs, broker's fee, origination fee, and payments made by the Plaintiff on the loan from the principal of $25,000 as set forth in Exhibit 24;

ORDERED the Plaintiff is awarded statutory damages in the amount of $1,000 pursuant to the Truth–In–Lending Act due to the inaccurate disclosures of material terms which when subtracted from $7,244.75 leaves $6,244.75; and it is further

·ORDERED the Plaintiff is additionally awarded statutory damages in the amount of $1,000 pursuant to the Truth–In–Lending Act due to the Defendant's failure and refusal to honor the Plaintiff's rescission which when subtracted from $6,244.75 leaves $5,244.75 owed by the Plaintiff; and it is further

ORDERED the Plaintiff is awarded actual damages in the amount of $2,000 pursuant to the Truth–In–Lending Act due to the Defendant's understatement of the finance charge in that amount which when subtracted from $5,244.75 leaves $3,244.75; and it is further

ORDERED that the Plaintiff is awarded $236.11 damages for the Defendant's violation of the Maryland Consumer Protection Act which when subtracted from $3,244.75 leaves $3,008.64; and it is further

ORDERED that the proof of claim filed by Allright Mortgage is as a secured creditor is hereby disallowed; and it is further

ORDERED that the Allright Mortgage submit a proof of claim as an unsecured creditor in the amount of $3,008.64; and it is further

ORDERED that judgment is entered in favor of the Plaintiff and against the Defendant for reasonable attorney's fees and costs; and it is further

ORDERED that the Plaintiff file a motion and an affidavit to support the award of attorney's fees and costs within 14 days of the date of this Order.