**NVF COMPANY, Plaintiff,**

**v.**

**NEW CASTLE COUNTY Defendant.**

**Civ.A. No. 00–577–RRM.**

United States District Court,
D. Delaware.

April 11, 2002.

As Revised April 18, 2002.

Robert W. Whetzel, Jeffrey L. Moyer, Thomas H. Kovach, Richards, Layton & Finger, Wilmington, DE, for plaintiff.

Wendy R. Danner, New Castle County Law Department, New Castle, DE, for defendant.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This adversary proceeding is a contract case in the context of a Chapter 11 bankruptcy. Plaintiff NVF Company is a Delaware corporation with its principal place of business in Yorklyn, Delaware. NVF is a debtor under Chapter 11 of the Bankruptcy Code. Defendant New Castle County is a county of the State of Delaware and provides sewer utility service to NVF.

On January 16, 1994, New Castle County filed a Proof of Claim against NVF for approximately $1,813,507.27 in unpaid sewer service fees from October 1991 to July 1993. After much delay and several continuances, on January 22, 1999, NVF filed an objection to New Castle County's Proof of Claim and its complaint against the County in this case. NVF alleges the County breached a 1970 agreement to make repairs to a sewer that was built by NVF but thereafter transferred to the County. NVF also alleges that the County violated a 1970 agreement and 1987 amendment to that agreement by refusing to acquire and operate a sewer pumping station on NVF's property. Finally, NVF alleges the County breached its duty of good faith and fair dealing by building another sewer pumping station in 1998 to avoid acquiring NVF's pumping station. NVF asserts that the damages from its breach of contract claims should act as a set-off to the County's claim for sewer service fees. On June 14, 2000, this court granted NVF's motion to withdraw the reference from the bankruptcy court.

Presently before the court are the County's motions for summary judgment. In its first motion, the County argues that NVF's claim for its repair costs under the 1970 agreement: (1) is barred by the doctrine of laches; (2) was waived when NVF undertook the repairs itself; (3) fails because NVF did not give notice to the County of breaks in the sewer line, purportedly an implied condition precedent of the contract; and (4) is not supported by sufficient evidence. With respect to NVF's claim that the County was required to acquire the on-site sewer pumping station, the County argues that NVF misreads the 1970 agreement. According to the County, its obligation to acquire the pumping station arose only when other sewer customers in Yorklyn were connected to the station. Because this condition precedent never occurred, the County reasons that NVF has no claim for breach of contract and that it is entitled to summary judgment.

In its second motion for summary judgment, the County argues that this court lacks subject matter jurisdiction over all of NVF's claims. It also contends that NVF's good faith and fair dealing claim fails for the same reasons the breach of contract claims fail. This is the court's ruling on the County's motions.

## I. *FACTUAL AND PROCEDURAL HISTORY*

The following facts are taken from the affidavits, documents, and deposition testimony submitted by the parties.

NVF has operated a manufacturing facility in Yorklyn, Delaware since at least 1905. Until 1970, NVF disposed of wastewater and other industrial discharge into the Red Clay Creek, directly adjacent to NVF's facility. As environmental concerns mounted, NVF sought to dispose of its wastewater into the County sewer system. Because the County did not have sewer lines in the Yorklyn area, however, the parties entered an agreement in 1970 to build them.

The 1970 Sewer Construction Agreement provides that NVF shall build a pumping station, force main, and gravity

line to interconnect its facilities with the existing sewer lines. Due to the topography, NVF had to build a pumping station on its property to pump its wastewater up the "force main," which used internal pressure to move the wastewater uphill. The force main attaches to the gravity line, which uses gravity to move the wastewater the remaining distance to the County's then-existing sewer lines. The entire sewer line is two and a half miles, with the pumping station and part of the force main on NVF property and the remaining force main and gravity line off-site. Pursuant to the 1970 Agreement, following NVF's construction of the sewer line, it conveyed the part of the sewer line not on its property, including all of the gravity line and much of the force main (the "off-site force main"), to the County, which was required to operate and maintain the off-site lines.

Central to the dispute are the provisions of the 1970 Agreement relating to the transfer of the pumping station and the portion of the force main on NVF's property (the "on-site force main") to the County. The opening provisions of the agreement state

WHEREAS, NVF proposes to pump the said sewage from Yorklyn to the vicinity of the Lancaster Pike, the pumping station being designed to accept future County sanitary sewers in Yorklyn; and WHEREAS, the County is agreeable to said connection and proposes to take over the said pumping station and operate and maintain it as soon as County sewers are constructed in Yorklyn.

The Agreement goes on to require:

8. NVF shall convey to the County the pumping station, forcemain inside their property, together with the necessary rights of access upon request of the County with the understanding that the County does not intend to request this conveyance until it builds sanitary sew-

ers in Yorklyn serving other customers. NVF shall not be required to accept any sewage from others into the system until the County takes over the pumping station and forcemain.

To allow for these later connections, the pumping station was required to have a capacity of at least 560,000 gallons per day, with 525,000 of those gallons reserved for NVF's use. The Agreement also states that "if the pumping station or forcemain are abandoned by the County, they will revert to NVF." Pursuant to the 1970 Agreement, NVF was required to pay service charges set by the County for use of the sewer lines.

The pumping station, force main, and gravity sewer were built by NVF in 1970 and 1971. Upon completion, NVF conveyed the gravity sewer and off-site portion of the force main to the County. Although there were no reported problems with the gravity sewer, the force main began to experience breaks shortly after its completion. According to William Witt, a retired NVF employee, the force main was built from polyvinyl chloride plastic, or PVC. In fact, the force main was the first sewer line in the County that used PVC. Witt testified that the heat of NVF's wastewater weakened the force main and cause it to break under pressure. These breaks caused NVF to shut down its operations until the break was fixed. For the first few breaks, the County was called to make repairs to the force main, but the County's response time was too slow for NVF. Witt believed the County was unfamiliar with repairing PVC force mains, and he reported that the slow pace of its repairs would require NVF to shut down for several days. After six months of breaks, it became apparent to Witt and other NVF employees that the County would not respond more quickly and NVF began making its own repairs with the assistance of a

contractor. NVF kept PVC piping and fittings in stock to make the repairs when necessary. NVF continued to make repairs to the force main, both on-site and off-site, from 1971 until August 1987, at a cost of $84,129. In August 1987, the County resumed making repairs to the off-site force main.

In 1986, NVF determined that it would cease using a private treatment facility to clean wastewater for disposal into the Red Clay Creek. As a result, it sought to increase its sewer discharge from 525,000 gallons per day to one million gallons per day. Around the same time, a developer of residential property in Yorklyn, Daniel Lickle, sought to have the county lay sewer lines for his proposed neighborhood across the Red Clay Creek from the NVF facility. The County considered permitting the developer to connect a sewer to the NVF pumping station, but County employees expressed some reservations about assuming responsibility for the NVF pumping station under the 1970 Agreement.

On July 17, 1987, NVF and the County entered an agreement that amended the 1970 Agreement to increase NVF's sewer discharge to 1 million gallons per day in return for a fee of $45,220 to the County.[1] The 1987 Amendment incorporated the terms of the 1970 Agreement, but states that if any terms or conditions of the two contracts conflict, the 1987 Amendment prevails. Under the 1987 Amendment, NVF was responsible for equalizing the flow of sewage so as not to exceed one million gallons per day. Paragraph 3 of the 1987 Amendment stated that "[A]ll facilities and modifications necessary to equalize flows in order to meet the above

discharge conditions shall be the sole responsibility of NVF and shall be subject to approval by the County." Once again, the 1987 agreement addressed connecting other sewer customers to its pumping station.

> NVF will allow other County customers to discharge via facilities located on and owned and operated by NVF, a total daily flow not to exceed 35,000 gallons. The daily flow from County customers allowed by NVF shall be considered part of the total daily flow discharged from the NVF force main to the County sewer service for purposes of the above-stated 1,000,000 gallons per day restrictions.

> All such connections to the NVF system shall be as approved by NVF and shall be at no cost to NVF. Sewer billings shall be adjusted to reflect the presence of any such non-NVF flows which pass through the NVF meter.

The 1987 Amendment reserved 965,000 gallons per day to NVF for its use. To equalize flows under the 1987 Amendment, NVF built a surge tank to store the facility's wastewater.

Throughout 1986, 1987, and 1988, NVF communicated with Lickle about permitting him to connect his development to the NVF pumping station. Witt testified that NVF was concerned that its capacity limits might be affected by adding connections, but NVF wanted the County to take over the pumping station because of its large electricity requirements. No connections were ever added to the NVF pumping station.

In 1991, the County and NVF began to dispute NVF's payment of sewer fees. Throughout 1992, the County and NVF

---

1. The parties dispute whether the 1987 agreement, which incorporated the 1970 Agreement and superseded any contrary provisions of it, was a separate agreement or merely an amendment to the parties' 1970 Agreement. For simplicity, and without addressing this conflict, the court will refer to the 1987 document as the "1987 Amendment."

sought to reach agreement concerning NVF's failure to pay its sewer fees, connecting other users to NVF's pumping station, and NVF's repair costs to the force main. Unable to reach agreement, the County began considering building another smaller pumping station, separate from NVF's, in Yorklyn.

On March 17, 1993, the County filed a monition action against NVF in Delaware Superior Court seeking to recover NVF's unpaid sewer fees. In August 1993, that action was stayed when three of NVF's creditors filed an involuntary bankruptcy petition for NVF under Chapter 11.

While the bankruptcy case proceeded, the County continued to evaluate sewer service in Yorklyn. Beginning in December 1993, when the County prepared an estimate of the costs of operating the NVF pumping station, the County began considering the most cost efficient method of providing sewer service in Yorklyn. The County continued to negotiate with NVF about its unpaid sewer fees and the County's takeover of the NVF pumping station, but was unable to reach agreement. In 1996, the County built a new 35,000 gallon pumping station in Yorklyn to bypass the NVF pumping station. The County also laid a four-inch force main parallel to the already-existing NVF off-site force main. The County replaced the NVF off-site force main, which it had maintained since 1987, with iron pipe. The new pumping station and force main were operational by mid–1998.

With the monition action stayed, the County submitted a Proof of Claim for unpaid sewer fees on January 26, 1994. The Proof of Claim sought $1,442,423.86 in principal and $124,713.94 in interest and is allegedly secured by a statutory lien against NVF's real property pursuant to Delaware law. The bankruptcy court confirmed a plan of reorganization for NVF on April 25, 1996. Under the plan, the County's claim was separately designated as a Class 5 Claim. The County was to be paid its claim, plus interest accruing at a rate of 9% per year, by the reorganized company and not from the Distribution Fund set up for general unsecured claims. Under the plan, NVF reserved the right to contest the County's claim "by setoff, objection or avoidance, so long as it commences or continues such action the earlier of March 30, 1996 or 30 days after the Consummation Date."

The deadline for contesting the County's claim was extended by consent of the parties until January 22, 1999. On that date, NVF filed its "Objection to the Claim of New Castle County and Complaint for Breach of Contract and Setoff," the complaint in this adversary proceeding. NVF's complaint alleges the County breached the 1970 Agreement by refusing to assume operation and maintenance of the NVF pumping station and on-site force main when it built other sewers in Yorklyn. It also asserts that the County breached the Agreement by failing to repair NVF's off-site force main between 1971 and 1987. Finally, NVF asserts a second count titled "setoff or credit," which incorporates the earlier allegations and asserts that NVF is entitled to setoff the amounts it expended to repair and maintain the off-site lines, the on-site lines, and the pumping station from amounts NVF otherwise owes the County.

The County answered and, on April 24, 2001, filed a motion for summary judgment on those two counts. With respect to NVF's claim for the repair and maintenance costs for the off-site force main from 1971 to 1987, the County argued that NVF's claim was barred by the doctrine of laches, that NVF waived its rights under the Agreement by making repairs itself, that NVF failed to inform the County of

breaks and therefore did not fulfill that implied condition precedent to the County's duty to repair, and that NVF has not provided sufficient evidence of its repair costs. With respect to NVF's claims for the County's failure to assume responsibility for the on-site force main and pumping station, the County argued that it had no obligation to assume that responsibility because no other sewer customers ever tied into the pumping station.

On April 26, 2001, NVF filed a motion to amend the complaint to add a count for the County's breach of the duty of good faith and fair dealing by building a new pumping station to avoid its alleged obligation to acquire NVF facilities. Following the withdraw of the reference to bankruptcy on June 14, 2000, the court granted NVF's motion to amend the complaint.

The County filed a second motion for summary judgment on NVF's third count on August 30, 2001, arguing that the court lacks subject matter jurisdiction over the dispute under its bankruptcy jurisdiction because the claim arose after NVF had confirmed its plan of reorganization and all property of the NVF estate had been transferred to the reorganized NVF. The county also argued that the court lacked subject matter jurisdiction over NVF's entire complaint because NVF had already confirmed a plan or reorganization. On the merits, the County argued that the County's obligation to assume responsibility for the on-site force main and pumping station never arose.

According to the County, as of August 30, 2001 the County's claim plus accrued interest was $2,928,292.52.

## II. DISCUSSION

### A. Does This Court Have Jurisdiction Over NVF's Claims?

■ In briefing on the County's motion for summary judgment on NVF's third count of the breach of good faith and fair dealing, the County initially argued that this court lacks subject matter jurisdiction over that count because it has no relation to the County's Proof of Claim for service fees and arose only after the County built sewers in Yorklyn in 1998, several years after the confirmation of NVF's reorganization plan. NVF presented a number of arguments in response, including that even if the court lacks jurisdiction over that third count, the court has supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367[2] by virtue of its jurisdiction over the first two, factually related, counts. In a supplemental brief filed after the court's hearing on the County's motions, the County has argued, for the first time, that there is no supplemental jurisdiction because the court also lacks jurisdiction over the first two counts. Thus, the County has argued that this court lacks jurisdiction over all three counts alleged by NVF as setoff. Although belatedly presented, challenges to the jurisdiction of this court must be considered by the court. *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 433 (3d Cir.1986) (recognizing "that

---

2. Section 1367 provides, in relevant part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." While some courts have noted that the plain meaning of § 1367

does not extend supplemental jurisdiction to bankruptcy courts, the court notes that it, as a district court, does have jurisdiction under that provision. *See, e.g., Adams v. Prudential Sec., Inc. (In re Found. for New Era Philanthropy)*, 201 B.R. 382, 398 (Bankr.E.D.Pa. 1996) (stating "[b]y its express terms, however, section 1367 is applicable only to the district court; it makes no reference to the bankruptcy court").

challenges to the subject matter jurisdiction of a federal court may be raised at any time").

The gist of the County's argument that the court lacks jurisdiction is that because NVF's confirmed plan of reorganization provides that the reorganized NVF shall be responsible for the County's claim, the adversary proceeding is not "related to" NVF's bankruptcy and the court therefore lacks jurisdiction pursuant to 28 U.S.C. § 1334(b).

This court's jurisdiction is controlled by 28 U.S.C. § 1334(b). That statute provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), the Third Circuit explained that "related to" jurisdiction in bankruptcy cases extends to actions that "could alter the debtor's right, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." The County argues that NVF's claims could not effect the debtor's rights or liabilities because NVF's confirmed plan of reorganization provides that the County's claims are to be satisfied by the reorganized NVF.

The court concludes that 28 U.S.C. § 1334(b) confers jurisdiction over NVF's claims asserted as a setoff to the County's Proof of Claim. Had NVF's plan of reorganization not been confirmed, the court would undisputedly have jurisdiction over both the County's Proof of Claim and NVF's right to challenge that claim by setoff with pre-petition claims against the County. The allowance of claims is a "core proceeding" under title 11. *See* 11 U.S.C. § 157(b)(2)(B). The County's position is limited to the argument that because the bankruptcy court confirmed a plan providing that the County's claim was to be fulfilled by the reorganized NVF, NVF's claims are no longer "related to" the bankruptcy case and thus there is no subject matter jurisdiction.

■ The court recognizes that the confirmation of a plan of reorganization revests the property of the estate in the reorganized debtor and that, as a result, the bankruptcy estate no longer exists. *See* 11 U.S.C. § 1141(b). *See Fairfield Cmtys., Inc. v. Daleske (In re Fairfield Cmtys., Inc.),* 142 F.3d 1093, 1095 (8th Cir.1998) ("Generally, once an bankruptcy debtor's reorganization plan has been confirmed ... 'the estate of the debtor, and thus the bankruptcy court's jurisdiction, ceases to exist'" (citation omitted)); *S.N.A. Nut Co. v. The Haagen–Daz Co. (In re S.N.A. Nut Co.),* 206 B.R. 495, 499 (N.D.Ill.1997). But while the estate of the debtor may no longer exist following plan confirmation, the debtor remains a debtor until the title 11 case has been closed pursuant to 11 U.S.C. § 350(a). Thus, this court has jurisdiction to resolve pre-petition Proofs of Claim and set-offs because the action "could alter the debtor's right, liabilities, options, or freedom of action." *Pacor, Inc.,* 743 F.2d at 994.

■ Indeed, the Bankruptcy Code contemplates resolving claims after the confirmation of a plan of reorganization. Section 1123(b)(3)(B) of the Code states that a confirmed plan can provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or the estate]." One court has stated that § 1123(b)(3)(B) "is broad enough to encompass ... the subset of claims that have already been filed (and are thus a matter of public record) but that remain unresolved." *In the Matter of P.A. Bergner & Co.,* 140 F.3d 1111 (7th Cir.1998). Section

1123(b)(3) has the effect of putting creditors of the estate on notice of the debtor's intent to pursue claims following the confirmation. *Harstad v. First American Bank,* 39 F.3d 898, 903 (8th Cir.1994) (referring to § 1123(b)(3) as "at least in part, a notice provision"). In this case, NVF's plan invoked § 1123(b)(3)(B) by stating "[t]he Company or the Reorganized Company shall also have the right to contest [the County's] claim by setoff, objection, or avoidance . . . ." Therefore, this court has jurisdiction to address NVF's first two claims to a setoff. *See In re Smith,* 866 F.2d 576, 580 (3d Cir.1989) (noting a bankruptcy court could exercise its discretion to retain jurisdiction over unresolved adversary proceedings following dismissal of the bankruptcy case).

■ As earlier noted, the County raises a different jurisdictional issue with respect to the third count of NVF's adversary complaint than it does for the first two. Both of the first two counts, as alleged, undisputedly arose prior to NVF's Chapter 11 petition [3] and are thus pre-petition. In contrast, NVF's third count, for the County's alleged breach of the duty of good faith and fair dealing, arises post-petition because it is premised on the County's 1998 construction of other sewers in Yorklyn. Because it arises post-petition, and indeed after the confirmation of NVF's plan of reorganization, the County argues this court lacks jurisdiction over it.

In response, NVF argues that its third count relates to County's Proof of Claim and is simply an alternative form of recovery for its second count for breach of contract. Therefore, NVF posits that this court might exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. NVF also argues that its third count contests the allowance of the County's claim and arises out of the same set of transactions that give rise to the County's claim. Therefore, it is "related to" the bankruptcy under *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), because it is inextricably intertwined with the estate's assets and will substantially alter the indebtedness arising from the contractual relationship.

The court agrees it can exercise jurisdiction pursuant to the "related to" standard over an action between a creditor and debtor on a pre-petition contract that only arises due to post-petition conduct. Several courts have held that a bankruptcy court can exercise jurisdiction on even a post-petition claim related to the administration of the claim in bankruptcy. *Southmark Corp. v. Coopers & Lybrand (In the Matter of Southmark Corp.),* 163 F.3d 925 (5th Cir.1999) (debtor's post-petition professional malpractice claim was a core proceeding); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works Inc.),* 815 F.2d 165, 169–70 (1st Cir.1987) (breach of a post-petition contract was within the jurisdiction of the bankruptcy court). This case is no different. The "good faith and fair dealing" claim presents identical facts as the breach of contract claim and NVF seeks the same remedy. While this factual identity is insufficient to confer jurisdiction on the court, *see Pacor, Inc.,* 743 F.2d at 994 ("the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the

---

**3.** The County argues that NVF's claim that the County was required to assume responsibility for the on-site facilities could have only arose post-petition, after the County built other sewers in Yorklyn. This argument, however, misstates NVF's position by assuming that the construction of other sewers in Yorklyn was a condition precedent to the County's acquisition of those facilities. NVF disagrees that such a condition exists and argues in its second count that the County's obligation to assume responsibility for the on-site facilities arose after the parties entered the agreements.

bankruptcy estate does not" create bankruptcy jurisdiction), the court finds it significant that litigation of this count relates to the final determination of the County's Proof of Claim and resolution will further the administration of the debtor's case. The court concludes that the fact that this count is litigated as a setoff to a creditor's Proof of Claim distinguishes the case from those in which the court has found a debtor's post-petition causes of action, unrelated to estate administration, to be beyond the jurisdiction of the bankruptcy court. *Cf. Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 802–03 (3d Cir. 1985) (debtor's post-petition claims of defamation and tortious interference with contract against a creditor and attorneys were not property of the estate and were therefore beyond the jurisdiction of the district court). Thus, the court concludes it may exercise jurisdiction over all three counts alleged by NVF to setoff the County's Proof of Claim.

B. *Summary Judgment Standards*

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Civil Rule 56 is applicable to adversary proceedings in bankruptcy pursuant to Bankruptcy Rule 7056. Under Rule 56, the moving party bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has shown an absence of genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing Rule 56(e)).

In this case, the County's motion for summary judgment involves the interpretation of the 1970 Agreement and the 1987 Amendment. Under Delaware law, "the starting point of contract construction is to determine whether a provision is ambiguous." *Cantera v. Marriott Senior Living Servs., Inc.,* No. 16498, 1999 WL 118823, *4 (Del.Ch. Feb. 18, 1999). Whether a contract is ambiguous is a question of law determined by the court. *Id.* "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone–Poulenc Basic Chems. Co. v. American Motorists Ins. Co.,* 616 A.2d 1192, 1196 (Del.1992). When a party to a contract dispute seeks summary judgment, "once a party demonstrates that the language of the contract at issue is clear and unambiguous, the burden shifts to the non-moving party to prove that there are still issues of fact remaining that would otherwise preclude entry of summary judgment." *Cantera,* 1999 WL 118823, *3 n. 2. Thus, to succeed on its summary judgment motions as a matter of contract law, the County must demonstrate that the 1970 Agreement and the 1987 Amendment are unambiguous and preclude NVF's claims. To defeat the County's motions, NVF may show either that the agreements are unambiguous and support its claims, or that the agreements are ambiguous and present questions of fact.

C. *Is NVF's Claim For Costs To Repair The Off–Site Force Main Barred By The Doctrine Of Laches?*

 NVF's complaint seeks to recover its costs for repair and maintenance of the off-site force main from 1971 to 1987. It has asserted a right to recover for these costs in two counts of its complaint; both its first count alleging a breach of contract and its second count asserting the breach of contract as a setoff to other payments due to the County. With respect to the breach of contract claim alone, neither party has briefed whether that claim is time-barred. Instead, both parties address whether the setoff claim is barred under the doctrine of laches. Before proceeding to the setoff claim, the court concludes that, to the extent NVF is seeking to prove breach of contract for the County's failure to repair the off-site force main as an independent affirmative claim, that claim is barred by the three year statute of limitations for contract actions. 10 Del. C. § 8106. Because the parties agree that the County began repairing the off-site force main at some point in 1987, and NVF's last claim for off-site repair costs occurred at that time, NVF's breach of contract claim brought in this case in 1999 is time-barred.[4]

It is count two, in which NVF's alleged breach of contract claim is asserted as a setoff to other amounts NVF owes the County, on which the parties disagree. The County claims NVF's right to recovery for the breach of contract as a setoff is barred by the doctrine of laches. The County relies on the doctrine of laches, rather than the statute of limitations for contract actions, because the setoff claim is equitable in nature. According to the County, laches bars this claim because NVF determined that the County's response time to repair the off-site force main was too long in late 1971, almost 30 years before the NVF made its claim for those costs in this action on January 22, 1999. The County claims this "unexcusable delay" has prejudiced the County's ability to defend itself. In particular, the County notes that both the NVF and County signatories of the 1970 Agreement are deceased, as are NVF's Vice–President of Operations during the early 1970s, NVF's general manager of the NVF plant during that time, NVF's maintenance manager during that time, and the County Superintendent of Operations during that time. Furthermore, the parties cannot locate the engineer responsible for the construction of the force main and pumping station for NVF and the County engineer responsible for its approval. Thus, the Counties submits it has established both NVF's inexcusable delay in bringing its action and resultant prejudice. *See United States Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir.1999) ("The party asserting laches as a defensive bar must establish (1) an inexcusable delay in bringing the action and (2) prejudice.").

NVF counters the County's invocation of the doctrine of laches by arguing that the doctrine has no application to a setoff defense. Furthermore, NVF submits the County has failed to show either an inexcusable delay or prejudice.

1. Can laches apply to a setoff defense?

The parties agree that the County's defense relating to the passage of time is properly asserted as laches, and not under Delaware's three-year statute of limita-

---

**4.** Even were the court to consider the three year statute of limitations to be tolled during the three years, from 1996 to 1999, that the parties consensually delayed litigation of the County's Proof of Claim and NVF's setoff claims, the court would still find NVF's claims to be barred by the three year statute of limitations.

tions for contract actions, 10 Del. C. § 8106. The doctrine of laches is applicable because the County's claim for setoff is equitable in nature. "The actual principle of setoff is equitable, and occurs when two parties, each of whom are indebted to the other, extinguish unrelated cross-demands against each other, leaving one party entirely indebted to the other." *In re Rehab Project, Inc.,* 238 B.R. 363, 370 (Bankr. N.D.Ohio 1999).

NVF argues that although its alleged setoff is an equitable claim and the doctrine of laches applies in equity, laches does not apply to setoff claims because such claims are defensive in nature. *See In re Hill,* 213 B.R. 934, 942 (Bankr.D.Md. 1996) (debtor could assert a Truth in Lending Act claim against a creditor as a recoupment or setoff although such claim would otherwise be barred by the statute of limitations). The justification for this proposition is that it would be unfair to permit a plaintiff to assert a claim that is not time-barred, but prevent a defendant from asserting a time-barred defense to that claim. For example, in an early case involving the government's allegedly erroneous double taxation of the same monies under the estate tax and income tax, the Supreme Court held that amounts paid under the allegedly erroneous estate tax assessment could be asserted as a recoupment defense against the income tax due, even though the challenge to the estate tax would itself be barred by the statute of limitations. *Bull v. United States,* 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). "This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Id.* NVF argues that because its claim for recovery of its repair costs is asserted as an defense and setoff to the

County's Proof of Claim, it cannot be barred by the doctrine of laches.

The County argues in response that NVF's claim to the off-site force main repair costs is not defensive in nature, and therefore the doctrine of laches can apply. The County's Proof of Claim seeks unpaid sewer fees from 1991 to 1993. The County asserts that because NVF's seeks reimbursement for repair costs from 1971 to 1987, its claim is not defensive in nature, but rather is an independent cause of action for relief. According to the County, because NVF's claim for repair costs is unrelated to the County's claim for sewer fees, the doctrine of laches can apply. It notes the *Bull* case has been limited to situations in which the Government attempts to tax "a single transaction, item or taxable event under two inconsistent theories." *United States v. Dalm,* 494 U.S. 596, 605 n. 5, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). Indeed, the Supreme Court, in discussing recoupment in tax cases, pointed out that its holding in *Bull* was limited to applying recoupment in single transaction cases. *See Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 67 S.Ct. 271, 91 L.Ed. 296 (1946) ("It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole."). The County argues that because NVF's setoff claim is unrelated to the underlying sewer bill, the fact that NVF's only requested relief is a setoff does not avoid the application of the doctrine of laches.

■ NVF's position that the doctrine of laches cannot apply to claims asserted as a setoff confuses the concepts of setoff and recoupment. The two concepts

are different. *See Smith v. American Fin. Sys., Inc.*, 737 F.2d 1549, 1552 (11th Cir. 1984) (distinguishing between the two). For example, Black's Law Dictionary defines "recoupment" as "[a] right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." Black's Law Dictionary 1275 (6th ed.1990). "Set-off" is defined as "[a] counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's clause of action." *Id.* at 1372; *see also Southeastern Sprinkler Co. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410, 421 n. 14 (3d Cir.1987) (noting that "under the setoff principles recognized by [§ 553(a) of the Bankruptcy Code], the mutual debt and claim contemplated generally arise from different transactions"). Thus, although both "recoupment" and "set-off" seek to offset a defendant's liability, the two concepts are distinguished by the nature of the offsetting liability—a defendant's recoupment claim is related to the same transaction as the plaintiff's claim, whereas a defendant's setoff claim is unrelated to the plaintiff's claim. *See Zweck v. D P Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921, 925 (1975).

An otherwise untimely claim asserted as a recoupment will not be time-barred. This court has stated "that as long as the main action is timely a recoupment will not be barred by a statute of limitations." *Nalley v. McClements*, 295 F.Supp. 1357, 1359 (D.Del.1969) (citing, inter alia, *Bull*, 295 U.S. at 262, 55 S.Ct. 695). "This rule is based on the theory that recoupment 'is a defensive measure concerning matters growing out of the same transaction or occurrence which was the basis of the opponent's claim and (is)

utilized for the reduction or extinguishment of the opponent's claim.'" *Id.* (citation omitted). A setoff claim, however, is unrelated to the opponent's claim, and thus it lacks the same defensive nature. This difference between recoupment and setoff explains why the Supreme Court permitted an untimely defensive recoupment claim arising from the same transaction in *Bull*, but limited that holding to situations in which the defensive claim is related to the same transaction in *Rothensies*. *See Rothensies*, 329 U.S. at 299, 67 S.Ct. 271.

The majority of cases cited by NVF for the proposition that a setoff claim cannot be time-barred actually involve recoupment because the claim asserted is related to the same transaction and is therefore truly defensive in nature. *See Bull*, 295 U.S. at 262, 55 S.Ct. 695; *In re Hill*, 213 B.R. at 942 (a debtor's defense under the Truth in Lending Act against a creditor's on a debt will not be time-barred); *Delaware Chems., Inc. v. Reichhold Chems., Inc.*, 121 A.2d 913, 917–18 (Del.Ch.1956) (although defendant's claim for affirmative relief based on "the same transaction or occurrence which forms the basis of plaintiff's claim" was barred by statute of limitations, the court suggested it might survive if asserted defensively). The only case supporting NVF's argument that the doctrine of laches does not apply to setoff claims is *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*, 75 B.R. 979, 985 (Bankr.N.D.Tex.1987), in which the court found that an attorney malpractice claim asserted by a debtor would not be time barred to the extent it is used defensively as a "setoff or recoupment" to the law firm's Proof of Claim for unpaid attorney fees. The court in *Lawler*, however, did not distinguish between setoff and recoupment, and therefore its decision suffers from the same lack of specificity as NVF's

argument here.[5]

The court agrees that claims asserted as a recoupment should not be time-barred if the underlying action is timely because they relate to the same transaction or facts. *See Nalley,* 295 F.Supp. at 1359. But were the court to extend the holding in *Nalley* on recoupment to setoff claims that would be otherwise time-barred if asserted independently, the result would be that any unrelated claim a defendant might have against a plaintiff, no matter how untimely, could be asserted as a setoff. This argument, proffered by NVF, is inconsistent both with the purpose of the doctrine of laches and with general principles of equity.

Furthermore, the County has cited a number of cases in which courts have applied the doctrine of laches to a statutory setoff claim brought by a creditor against a debtor under 11 U.S.C. § 553. *See Scherling v. Chase Manhattan Bank, N.A. (In re Tilston Roberts Corp.),* 75 B.R. 76, 79 (S.D.N.Y.1987) (noting that "[t]he doctrine of laches, another creature of equity, may bar a creditor's attempt to assert a right to setoff,"); *Weems v. United States (In re The Custom Center, Inc.),* 163 B.R. 309, 317 (Bankr.E.D.Tenn.1994) (noting that "estoppel, laches, waiver, or election" may bar a creditor's setoff claim). NVF argues that the situations in those cases can be distinguished because those courts held a creditor's delay in asserting a setoff claim in bankruptcy could give rise to laches, whereas here the debtor is asserting a setoff claim against a creditor's Proof of Claim. The court concludes, however, that this is a distinction without a difference. Regardless of which party asserts a setoff claim, the doctrine of laches should apply.

The question remains, however, whether NVF's second count, seeking to recover its repair costs to the off-site force main as a setoff, is indeed a affirmative claim for relief pled as setoff or is actually a defensive recoupment claim. If it is the latter, it will not be time-barred if the opponent's claim is timely. If the former, the doctrine of laches can apply. It is apparent from the face of the complaint that NVF's claim is closer to a setoff than to a recoupment. The only relation between the County's claim for unpaid sewer fees and NVF's claim for its off-site force main repair costs is that both are generally related to NVF's use of sewers. The events surrounding the two claims are separated by four years. Moreover, NVF's claim against the County arises from the 1970 Agreement, whereas the County's claim against NVF arises from the regular imposition of tariffs for sewer discharge. Thus, the court concludes that NVF's setoff claim is in the nature of a setoff and not a recoupment. Further, the court believes the doctrine of laches can apply in setoff because NVF's setoff claim is factually unrelated to its liability to the County for sewer fees. Therefore, if the elements of the doctrine of laches are shown, the court will find NVF's setoff claim for repairs to the off-site force main to be time-barred.

### 2. Are the elements of the doctrine of laches satisfied?

■ The Delaware Supreme Court has stated that "[t]he essential elements of laches are: (i) plaintiff must have knowledge of the claim and (ii) there must be prejudice to the defendant arising from an unreasonable delay by plaintiff in bringing the claim." *Fike v. Ruger,* 752 A.2d 112, 113 (Del.2000). To these elements, the

---

**5.** Moreover, the court in *Lawler* recognized that its discussion of the issue was not central to its judgment because the law firm withdrew its Proof of Claim, and thus the attorney malpractice claim could not be asserted defensively in any event. *Lawler,* 75 B.R. at 983 n. 10.

plaintiffs argue that because laches is "based on the theory that 'a person with knowledge of an impending transaction should not be permitted to sit by in silence while positions are fundamentally changed by potential adversaries,'" *id.* (citing *Elster v. American Airlines,* 128 A.2d 801, 805 (Del.Ch.1957)), the County must also show a change in position to establish the applicability of the doctrine.

Neither party has disputed that the first element of laches is satisfied. NVF's knowledge of its claim can be presumed because it was a signatory to the 1970 Agreement and was aware of the County's obligation to repair the off-site force main. Even if it were unaware of its claim against the County, because such knowledge could have been easily obtained, it can be attributed to NVF. *Id.* at 114 ("a plaintiff is chargeable with such knowledge of a claim as he or she might have obtained upon inquiry, provided the facts already known to that plaintiff were such as to put the duty of inquiry upon a person of ordinary intelligence").

NVF maintains that the County cannot satisfy the remaining elements including NVF's unreasonably delay, the County's prejudice, or the County's change in position.

■ In support of the County's argument that NVF unreasonably delayed in bringing suit, it notes that the statute of limitations here for an analogous claim at law is three years, 10 Del. C. § 8106. Courts of equity will generally apply the statute of limitations of analogous claims at law in evaluating whether a plaintiff's delay is unreasonable. *See Schmidt v. Schmidt,* Del. Ch. Nos. C.A. 1117–K, 1116–K, 1994 WL 198704, *3 n. 1 (Del.Ch.1994) ("When a suit is brought in a Court of Equity and there are concurrent remedies at law in equity, it is not uncommon for the Court to consider the analogous statute of limitations at law in determining whether plaintiff is guilty of unreasonable delay."). Because NVF delayed more than three years before bringing its claim for off-site force main repairs, the County argues this delay was unreasonable.

■ NVF does not explain why, on the facts of this case, its delay was reasonable. Rather, it argues the delay was presumptively reasonable because the 1970 Agreement was an instrument under seal and is therefore exempted from the otherwise analogous three-year statute of limitations. *See Monroe Park v. Metropolitan Life Ins. Co.,* 457 A.2d 734, 737 (Del.1983) (a sealed instrument is exempted from the statute of limitations). NVF notes that the signature lines of the 1970 Agreement contain the word seal, bear the impression of a seal, and are notarized. These actions, NVF submits, are sufficient to create a sealed instrument under Delaware law. *See Peninsula Methodist Homes and Hosps., Inc. v. Architect's Studio, Inc.,* No. C.A. 83C–AU–118, 1985 WL 634831, *1–2 (Del.Super.Ct.1985) (finding a clause mentioning the word "seal" in the body of the contract, together with a notation "seal" on the signature lines and an actual corporate seal was sufficient to create a sealed instrument).

The County argues that the 1970 Agreement is not a sealed instrument. It argues that "[t]he mere existence of the corporate seal and the use of the word 'seal' in a contract do not make the document a specialty." *Aronow Roofing Co. v. Gilbane Building Co.,* 902 F.2d 1127, 1129 (3d Cir. 1990) (discussing Delaware law). Therefore, the County contends a delay of more than three years is presumptively unreasonable.

The County's reliance on *Aronow* and NVF's reliance on *Peninsula Methodist Homes* can be reconciled. As explained in

*AT & T Co. v. Harris Corp.*, 1993 WL 401864, *7 (Del.Super.Ct.1993) (Jacobs, V.C., by designation), the distinction between the two cases is the use of "language in the body of the contract which suggests that the contract is under seal." As stated in *Aronow*, "for a contract to be under seal and thus a specialty, it must contain language in the body of the contract, a recital affixing the seal, and extrinsic evidence showing the parties' intent to conclude a sealed contract." *Aronow*, 902 F.2d at 1129. Here, the 1970 Agreement contains a recital affixing a seal, but the text of the agreement does not include "language in the body of the contract" evidencing an intent to create a sealed instrument. It states only that "IN WITNESS WHEREOF: The parties hereto have duly executed this agreement on the day and year aforesaid." In contrast, the court in *Peninsula Methodist Homes* found a seal existed because the contract stated "In witness whereof, the parties hereto have hereunto set their hands and seals ...." *Peninsula Methodist Homes*, 1985 WL 634831, *2. Lacking any indicia in the body of the 1970 Agreement that the parties intended to enter into a sealed instrument, the court finds that it is not such an instrument.

Therefore, the court concludes the three year statute of limitations in 10 Del. C. § 8106 is an apt analogy for purposes of applying the doctrine of laches to NVF's claims. Because NVF waited long in excess of this three year limitation, the court finds that the County has established NVF's unreasonable delay.

▉ NVF also argues that the County has not shown a change in position as a result of NVF's delay and that its failure to do so is itself sufficient to deny the application of laches. NVF has not produced any precedent establishing that a change in position is a necessary element of laches. The court does not doubt that a defendant's change of position on account of a plaintiff's delay is an important consideration in evaluating the reasonableness of the delay and prejudice to the defendant. *See Hudak v. Procek*, 727 A.2d 841, 843 (Del.1999) (describing a defendant's change of position as a factor "of supreme importance" in considering the reasonableness of the delay) (citing *Federal United Corp. v. Havender*, 11 A.2d 331, 343 (Del. 1940)). However, the court is aware of no case elevating the change in position from an important consideration to an element that must be shown in every case. Therefore, the court does not believe the County's alleged failure to show a change in position as a result of NVF's delay to be fatal to the application of laches.

▉ Finally, the County argues it has been prejudiced by NVF's delay because both the signatories of the 1970 Agreement and many of the NVF and County employees charged with oversight of the off-site force main are either deceased or cannot be located. In response, NVF claims that this is insufficient because the County cannot show how it has been actually prejudiced by the absence of these witnesses or explained how their testimony might be relevant. NVF's requirement that the County show "actual prejudice" is misguided. The death of important witnesses is generally sufficient to establish prejudice. *See Fike*, 754 A.2d at 262. In the case of deceased witnesses, the testimony of those witnesses cannot possibly be known. In such cases, if a deceased witness could have given testimony both relevant and important to the determination of the action, that witness's death can be enough to satisfy a showing of prejudice. In this case, the County has shown that almost all of the important witnesses are deceased. Those witnesses include the negotiators and signatories of the 1970

Agreement, whose testimony might be helpful in resolving any ambiguities in the document, and many of the NVF employees whose efforts in repairing the off-site force main are the very actions for which NVF seeks to recover. Given the indispensibility of these witnesses, the court believes that the County has shown prejudice from NVF's delay.

Thus, the court finds that the doctrine of laches should bar NVF's claims to recover for repair costs of the off-site force main from 1971 to 1987. Given the long delay of NVF in bringing this claim and the prejudice the County is sure to experience in defending this untimely claim, equity requires the application of the doctrine of laches. For this reason, the court will grant the County's motion for summary judgment as to this claim. The court need not address the alternative arguments suggested by the County, including that NVF waived its claim by making the repairs itself, failed to fulfill a condition precedent of informing the County of the breaks, and failed to provide adequate evidence of its damages.

D. *Is The County Entitled To Summary Judgment On NVF's Claim That The County Breached The Agreements By Failing To Take Over The Pumping Station And On–Site Force Main?*

██ NVF claims that the County breached its agreements with NVF when it refused to assume operation and maintenance of the on-site force main and pumping station after constructing sanitary sewers to serve other customers in Yorklyn. The County argues that it is entitled to summary judgment on this claim because having other customers tie-in to the pumping station was a condition precedent of the County's obligation to assume responsibility for the on-site facilities. Because no customers tied in to the pumping station, the County submits that this condition precedent was never satisfied and its obligation never arose. NVF retorts that there is no such condition precedent and, if there is, it was satisfied when the County built other sewers in Yorklyn.

The locus of the parties' disagreement is paragraph 8 of the 1970 Agreement, which states, in part, that "NVF shall convey to the County the pumping station, forcemain inside their property, together with the necessary rights of access upon request of the County with the understanding that the County does not intend to request this conveyance until it builds sanitary sewers in Yorklyn serving other customers." NVF contends that paragraph 8 is the source of the County's obligation to assume responsibility for the on-site facilities, while the County counters that the latter portion of paragraph 8 creates a condition precedent that the County first construct other sewers in Yorklyn before any other obligation can arise.

The parties also look to other provisions of the 1970 Agreement such as the "whereas" clauses, which note that the pumping station and force main were designed "to accept future County sanitary sewer extensions in Yorklyn" and that "the County ... proposes to take over the said pumping station and operate it and maintain it as soon as County sewers are constructed in Yorklyn." According to the County, these provisions make clear that the construction of other sewers was a condition precedent. According to NVF, these provisions indicate the County was required to assume responsibility for the on-site facilities without the prior fulfillment of any condition precedent.

The County also argues that the parties modified the 1970 Agreement in the 1987 Amendment. Because NVF sought to increase its sewer discharge in 1987 to an

amount near the threshold of the County's sewer facilities, the parties agreed in paragraph 3 that "[a]ll facilities and modifications necessary to equalize flows in order to meet the above discharge conditions . . . shall be the sole responsibility of NVF." Paragraph 4 of the 1987 Amendment states that "NVF will allow other County customers to discharge via facilities located on and owned and operated by NVF and shall be subject to approval by the County." Because these provisions reaffirm NVF's continued ownership of the on-site force main and pumping station, the County argues that they supersede any part of the 1970 Agreement obligating the County to assume responsibility for the on-site facilities upon the construction of other sewers in Yorklyn.

The court concludes that, by focusing on whether a condition precedent existed before any obligation to assume responsibility for the on-site facilities arose, the County has mistakenly assumed the threshold inquiry of whether such an obligation exists at all. Before determining whether a condition precedent must be fulfilled before the performance of the parties is due, the court must evaluate what those performance obligations are. In this case, both parties look to the obligations created by paragraph 8 of the 1970 Agreement, which states only that "NVF shall convey to the County the pumping station, forcemain inside their property, together with the necessary rights of access *upon the request of the County* . . . ." (emphasis added). That is, NVF's obligation to convey the on-site facilities was dependant upon the request of the County.[6] Because paragraph 8 states "upon the request of the County," that provision cannot be said to create a binding obligation for the County to take-

over the on-site facilities. Rather, by premising NVF's responsibility to convey the on-site facilities to the County on the County's request, the 1970 Agreement creates an option for the County to assume the facilities on request—and not a duty to do so.

This is not to say that there are no conditions precedent in the 1970 Agreement. The remainder of the paragraph states that said transaction will occur "with the understanding that the County does not intend to request this conveyance until it builds sanitary sewers in Yorklyn serving other customers." It is this phrase on which the County bases its argument that, under the 1970 Agreement, the construction of sewers in Yorklyn is a condition precedent to NVF's obligation to transfer the on-site facilities to the County. The Restatement (Second) of Contracts defines a "condition," as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1979). Applying this standard, it is apparent that Paragraph 8 unambiguously does include a condition precedent—but not as the County suggests. The construction of sanitary sewers in Yorklyn is not a condition precedent to the County's obligation to assume responsibility for the on-site facilities, as the County suggests. Rather, paragraph 8 sets up the construction of sewers in Yorklyn as a condition precedent to the County's right to request the conveyance.

While NVF has not addressed whether the 1970 Agreement creates a conditional option in its briefing, it can be expected to argue that the County's eventual assumption of the on-site facilities is an important

---

**6.** The court notes that NVF conveniently and tellingly omitted the phrase "upon the request of the County" from its recitation of para-

graph 8 more than once in its answering brief. See Ans. Br. at 8, 53, 67 n. 18.

part of the 1970 Agreement and that Agreement includes many provisions addressing that eventuality. But NVF has not shown, in its briefing to this point, where the 1970 Agreement binds the County to request the conveyance of the on-site force main and pumping station. The court finds that this situation is analogous to *The Flathead Joint Board of Control of the Flathead v. United States,* 30 Fed.Cl. 287, 294 (1993), in which the court noted that a provision of a contract stating "[u]nless and until he shall in the future turn over the management thereof, the Secretary of the Interior shall have control and management of [the] project and all the works and rights thereof," was insufficient to obligate the Secretary to turn over the project to the plaintiffs. The provisions of the 1970 Agreement addressing the eventuality of a conveyance do not necessarily create an obligation for the County to take over the on-site facilities merely because the County has the option of doing so. Rather, those provisions address NVF's responsibilities should the County exercise that option.

Nor does the 1987 Amendment contain an obligation for the County to assume the on-site force main and pumping station. Rather, the 1987 Amendment restates that the on-site facilities are "owned and operated by NVF" and states that NVF is responsible for regulating that daily flow of sewage. Thus, the 1987 Agreement's assumption that NVF will continue to own and operate the on-site facilities, even after connecting other customers, is consistent with an understanding of the 1970 Agreement that the County has the option to acquire the on-site facilities but that it has not chosen to do so.

Therefore, the court concludes that because the County had no obligation to assume the operations of the on-site facilities, NVF cannot base a breach of contract claim on such an obligation. Thus, the court will grant the County's motion for summary judgment with respect to NVF's second count.

E. *Is the County entitled to summary judgment on NVF's good faith and fair dealing claim?*

■ NVF's third count is that the County breached the duty of good faith and fair dealing by constructing sewers in Yorklyn in 1998 that failed to tie-in to the NVF pumping station and force main, thereby leaving NVF responsible for the continued operation and maintenance of those facilities. The County argues it is entitled to summary judgment on the good faith and fair dealing claim because it was not required by the 1970 Agreement to build sewers that tie-in to the NVF facilities. Rather, the 1970 Agreement requires, at most, that if the County did build sewers that tied into the NVF facilities, that then the County would assume responsibility. Because the County reasonably chose not to tie-in to the pumping station, there can be no violation of the duty of good faith and fair dealing. Moreover, the County argues once again that under the 1987 Amendments, the on-site facilities were to remain the responsibility of NVF even if the County did choose to tie-in other users into the NVF facilities.

The court agrees that the County is entitled to summary judgment on NVF's claim the County breach the duty of good faith. Delaware courts have stated that the implied duty of good faith and fair dealing "arises only where it is clear from what the parties expressly agreed, that they would have proscribed the challenged conduct as a breach of the implied covenant of good faith had they thought to negotiate with respect to the matter." *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14, 22–23 (Del.

Ch.1992). Thus, the question is whether it is clear from the 1970 Agreement and the 1987 Amendment that the parties would have proscribed the County's construction of other sewers in Yorklyn had they thought to do so. The court concludes that the 1987 Amendment makes clear that NVF's continued operation of the on-site facilities without any County responsibility to undertake such operation was contemplated by the parties and therefore cannot be the basis for a breach of the duty of good faith.

The 1987 Amendment clearly foreshadows NVF's continued operation of the on-site facilities, even following the tie-in of other sewer customers in the Yorklyn area. Paragraph 4 of the Amendment states that "NVF will allow other County customers to discharge via facilities located on and owned and operated by NVF...." Given this provision, it is clear that the parties envisioned the attachment of other sewer users to the NVF property and NVF's continued operation of its on-site facilities even after such a connection. Because the operation of the on-site facilities rests squarely with NVF whether or not the County chose to attach other users to NVF's facilities, the parties could not have considered the County's construction of other sewers, to avoid such interconnection, to have been a breach of an implied duty in the 1970 Agreement or 1987 Amendment. The 1987 Amendment makes clear that the parties envisioned NVF's continued ownership and operation of the sewer facilities because it placed all responsibility for regulating sewer discharge from those facilities on NVF even if other users connected. Therefore, the court finds that the County has shown that the parties would not have proscribed the County's construction of another pumping station and force main in Yorklyn had they addressed that situation in the 1970 Agreement and 1987 Amendment. The court will therefore grant the County's motion for summary judgment on this count.

## III. CONCLUSION

For the foregoing reasons, the court finds that it has jurisdiction over NVF's claims asserted as a setoff and that New Castle County is entitled to summary judgment on NVF's claims.